IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| LEIGH ANN ALFORD, individually and as Administrator of the Estate of Gerald Martin, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 6:20-cv-03018-MDH |
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Defendant. | ) |

## ORDER

On September 27, 2021, the Court conducted a bench trial. Prior to the trial, the parties submitted a joint pretrial memorandum (Doc. 40) in which they set forth "Identification of facts not in dispute to which the parties will stipulate" which are as follows:[1]

**Parties' Stipulation – Doc. 40**

Gerald Martin ("Martin") was 74 years old when he was hospitalized at Truman in June 2017. He had a long history of treatment at Truman, but on this particular occasion he was hospitalized from June 6-12, 2017, for bilateral femoral endarterectomies (surgical removal of the lining of an artery) with stent placement.

On his discharge date of June 12, 2017, Martin was placed in a wheelchair and wheeled out by Registered Nurse Claudia Jo Simkins to meet his family's vehicle. No restraints were used on wheelchairs at Truman. According to Plaintiff, the wheelchair had two pillows in the seat under

---

[1] Even though the parties had stipulated to these facts in their pretrial memorandum evidence was also presented to the Court during the bench trial supporting these facts.

1

Martin. The Defendant claims there was only one pillow under Martin. As they approached the circle drive, the wheelchair tipped forward, and Martin fell out of the wheelchair onto the ground.

Martin did not to go to the ER at that time. He went home with his family. Later that night, he went to Citizens Memorial Hospital (CMH) in Bolivar reporting low back pain, and an X-ray was taken. The radiologist reported chronic T12/L1 compression fractures related to 2011 and 2016 images they had, predating the wheelchair incident.

Martin's daughter called the VA on June 20, 2017, indicating Martin had pain in his mid-back, rating it an 8 out of 10, which began after the wheelchair incident at issue, and that his groin incisions were causing shooting pain. Martin's next appointment was June 23, 2017, with the vascular surgeon, and on that date he was transferred to University Hospital in Columbia, where he received care for his open wounds. The T12-L1 anterior wedge compression deformities, which predated the wheelchair incident, were again noted. He was discharged to Osage Beach Rehabilitation facility, where he continued to have problems ambulating and his wounds were addressed.

On August 10, 2017, Martin returned to CMH and was seen there by Parkview Orthopedics, with the chief complaint of back pain after being "dropped from his wheelchair" after surgery on June, 12, 2017. He reported back pain at 6 out of 10 and up to 10 out of 10 primarily in his mid-back. Back pain prior to the wheelchair incident was denied by the patient and his family, and they reported he was ambulating prior thereto. Diagnostic imaging again showed the compression fracture at T12 and L1 and a concern that the T12 compression was "pathological."

Martin continued being cared for at home, and with treatment at Truman for other conditions. In January 2018, he underwent an aortic valve replacement by the TAVR method. Martin continued to decline and on June 5, 2018 he died.

After timely exhausting her administrative remedies, Martin's daughter, Leigh Ann Alford, brought the instant suit under the FTCA against the United States. Plaintiff has brought both a Survival Action and an action pursuant to Missouri's Wrongful Death Act.

**The Court's Additional Findings of Fact**:

1. Plaintiff is the only child of the deceased, who was not married at any time between June 12, 2017 and his death.
2. Plaintiff has complied with all administrative requirements and prerequisites for consideration of her claims before this Court.
3. The hospital was operated by the Veterans Administration of the United States and was staffed by employees of the Veterans Administration of the United States.
4. There is no direct evidence as to why the wheelchair suddenly stopped, causing Martin to fall out of the wheelchair onto his bottom. No defect in the wheelchair was identified and no obstruction or defect in the concrete sidewalk was located to explain the sudden stop causing Martin's fall. The nurse pushing the wheelchair had no explanation for the sudden stop.
5. After Martin fell out of the wheelchair, he was assisted by medical personnel of the hospital who used a lift to assist Martin into his family's private vehicle which took him home.
6. Plaintiff testified her father had a look of pain on his face after the fall. Martin's brother also testified Martin had a look of pain.
7. Defendant contends Martin was offered follow up medical evaluation in the emergency room immediately after the fall, but he refused. Plaintiff denies Martin was offered this evaluation. Plaintiff admits, however, Martin was eager to get home.

8. After returning home, Martin sought follow up care reportedly on the advice of the doctor's office who had performed the vascular surgery.

9. Martin was in the NHC Osage Beach Rehab and Health Care Center from his admission date of July 6, 2017 to his discharge on July 31, 2017.

10. In January 2018, Martin was 74 years old when he underwent an aortic valve replacement.

11. Martin had a history of heart related issues including the placement of multiple stents and hypertension before the wheelchair incident.

12. Martin also had a long history of other medical conditions predating the wheelchair incident including, COPD, arthritis, and compression fractures at T12 and L1.

13. Martin's death certificate states, underlying cause: "manner: natural; respiratory failure – 1 week; heart failure – 1 month; fraility – 2 months; old age – years; sig cond: malnutrition" as the cause of death.

14. Plaintiff claims no economic damages and provides no proof of any.

**Expert Testimony**

**Dr. Wilkins – Plaintiff's expert**

Plaintiff's expert Michael Wilkins, M.D., Board Certified in Internal Medicine, opined that the fall from the wheelchair resulted in Martin aggravating old compression fractures at the T12 and L1 levels and possibly suffering a new compression fracture at the T11 level. Wilkins opined that pain from the fracture sites caused the deceased to breath less deeply which led to development of the pleural effusion which was first noted in the record on June 13, 2017, the day after the fall. Wilkins opines that this pain combined with the inactivity associated with it contributed to cause Martin's pleural effusion to become worse over time ultimately contributing to his death. Wilkens refers to records of the Parkview orthopedic group in support of his belief Martin suffered a new

4

Case 6:20-cv-03018-MDH   Document 48   Filed 11/18/21   Page 4 of 9

compression fracture and aggravated previous fractures. The Court, however, finds those medical records equivocal concerning the existence of any new compression fracture. They clearly identify only the compression fractures which predated the wheelchair incident. The Court notes the report submitted by Dr. Jack Jennings, Board Certified Radiologist and Section Chief and Director of Musculoskeletal and Spine Intervention at Mallinckrodt Institute of Radiology, Washington University, submitted by Defendant as Government's Exhibit 7, found no acute fractures on the 2017 radiographs or CT angiogram. He found only preexisting compression fractures at T12 and L1. He noted no significant change in these fractures from prior to the wheelchair incident. Further, records of the back pain endured by Martin, as reflected in the medical records following the fall, are inconsistent. For example, Dr. Farid testified that the Osage Beach Rehab records of June 2017 listed 14 ailments but not back pain, and the Parkview Orthopedics records dated August 10, 2017, reflect that the history of back pain was denied by the family. Dr. Farid testified that while Martin had a long history of back pain, neither acute nor long term back pain was mentioned in the admission notes when Martin was taken to Parkview Orthopedics.

While it is true that the first indication of pleural effusion in the medical record is on the day following the fall, it is unclear that the shallow breathing asserted by Wilkins could have so quickly led to the development of that condition. The Court is not persuaded that the pain from the wheelchair incident, as opposed to Martin's chronic back pain, persisted at such a different level to still be a significant contributing concern to deep breathing at the time of death. It should be noted, Martin's condition improved sufficiently between July 2017 and January 2018 to make him a suitable candidate for significant heart surgery.

5

**Leslie Boyd, R.N. – Plaintiff's expert**

Plaintiff's nursing expert, Leslie Boyd, R.N., opines that any patient fall from a wheelchair being pushed by a registered nurse necessarily involves negligence. While she does not identify precisely why she believes the wheelchair stopped, or how the nurse should have prevented the sudden stop, she does express the opinion that the nurse was negligent and responsible for the fall. She criticizes the nurse for allowing the patient to have pillows (Plaintiff claims there were two, the nurse claims only one) in the wheelchair. She says that the balance and stability of the wheelchair is impacted when a patient is sitting on pillows and that the patient doesn't sit safely back in the wheelchair when there are pillows behind them. She testified the practice violates the standard of care even when the patient requests or even insists on pillows.

**Reza Farid, M.D. – Defendant's expert**

Defendant's expert Reza Farid, M.D., Board Certified Physical Medicine & Rehabilitation, testified there was no causal link between Martin's fall and his pleural effusion or death. Dr. Farid related the pleural effusion to the long history of heart problems and COPD suffered by the deceased, noting the condition worsening in the months following Martin's valve surgery leading up to his death. Further, to the extent deep breathing somehow is causally related to pleural effusion the doctor noted the deceased had a long history of chronic back pain, COPD, and was a lifelong smoker – all of which would impact breathing issues and are unrelated to the fall. The smoking habit is one that Martin refused to give up notwithstanding his many medical conditions and medical advice. In addition, Dr. Farid cites to the radiology report of Dr. Jennings which found the absence of any new compression fractures and noted no evidence of significant changes in old compression fractures from the wheelchair incident.

# FINDINGS

Based on the evidence presented, the Court finds Defendant was negligent in the transport of Defendant in the wheelchair. While the testimony by nurse Simkins and Dr. Farid indicate that complying with a patient's request for pillows in a wheelchair is the norm and not negligent, Plaintiff's expert Boyd opined that negligence caused Martin's fall and that allowing pillows in the wheelchair violated a standard of care in safely transporting a patient. Complicating the liability issue in this case is the lack of explanation for the sudden stop of the wheelchair.

However, the Court does believe the pillow, or pillows, that were in Martin's wheelchair would have changed the balance of the patient when the sudden stop occurred making a fall from the wheelchair more likely. Further, the Court believes that it was the duty of the Veterans Administration, through its employees, to safely transport the patient from the hospital. As a result, Martin's fall from the wheelchair was a breach of that duty. While there may be circumstances where a fall from a wheelchair in a medical facility under the guidance of medical personnel will not equate to negligence, such as patient disobedience in prematurely exiting the wheelchair, or failing to follow directions, or intervention of a third party, there is no evidence of any such events in this instance. Here, even if Martin insisted on pillows in his wheelchair, it is the duty of the medical provider to make the ultimate transport decision.

Therefore, the Court finds for the Plaintiff and against Defendant on the issue of liability. The Court assigns 100% fault to the Defendant.

The Court further concludes that the fall from the wheelchair set back Martin's recovery from vascular surgery and may have caused him temporary back pain by reaggravating preexisting compression fractures. Plaintiff claims Martin's quality of life was never the same after the fall from the wheelchair and that his quality of life was substantially impacted by the fall. The Court

finds the wheelchair incident temporarily impacted Martin's condition but that many other health related factors also impacted his quality of life. The Court acknowledges Martin's rehabilitation was completed in a facility rather than being completed at home as originally planned. This impacted his quality of life during the time he was in the rehabilitation facility for approximately one month. Martin was released from that facility and returned home on July 31, 2017.

The Court finds no causal connection between Martin's fall from the wheelchair and his death. The Court does not find that Martin's fall from the wheelchair directly caused or directly contributed to cause his death. Instead, the Court finds Martin's death was directly caused or directly contributed to be caused by his age, his long history of heart problems and COPD, and the expected complications from those conditions including pleural effusion.

The Court awards damages on the survival action in the amount of $15,000 in compensation for the fall, pain and suffering caused by the fall, and the setback in Martin's recovery endured by the deceased as a result of the fall during the time he was in the rehabilitation facility. The Court finds such sum provides fair and reasonable compensation for consequences suffered by Martin as a result of the wheelchair incident. The Court declines to find Martin suffered any new compression fracture in the fall.

The Court finds against Plaintiff on the wrongful death claim. The Court concludes that Martin's fall from the wheelchair neither directly caused nor directly contributed to cause his death.

## JUDGMENT

Accordingly, for the reasons set forth herein and consistent with this Court's findings, Judgment is hereby entered in favor of Defendant against Plaintiff on Count II – Wrongful Death. Judgment is hereby entered in favor of Plaintiff against Defendant on Count I – Survival Action.

It is hereby Ordered, Adjudged and Decreed that Plaintiff is not entitled to any damages as a Class I beneficiary of the Missouri Wrongful Death Act for claims raised in Count II.

It is further Ordered, Adjudged, and Decreed that Plaintiff shall have and recover from Defendant the sum of Fifteen Thousand Dollars ($15,000.00), said amount representing compensation for the loss and damages suffered by Gerald Martin prior to his death as claimed in Count I. Taxable costs to be borne by Defendant.

**IT IS SO ORDERED.**

DATED: November 18, 2021

                                             *<u>/s/ Douglas Harpool</u>*
                                             **DOUGLAS HARPOOL**
                                             **UNITED STATES DISTRICT JUDGE**